[No. 5042-4-III.   Division Three.   September 8, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. SHARON
KAY MOREAU, *Appellant.*

*Robert B. Henderson, Constance D. Gould,* and *Anderson, Evans, Craven, Lackie & Henderson,* for appellant.

*Donald C. Brockett, Prosecuting Attorney,* and *Fred J. Caruso, Deputy,* for respondent.

EDGERTON, J.*—The defendant Moreau, convicted of first degree theft by a jury verdict, appeals.[1] The defendant was employed by Joseph P. Diamond in October 1978 to work in his business, Independent Bolt and Farm Supply Company. Her employment terminated April 13, 1980, when an arson–caused fire interrupted the business. Independent Bolt and Farm Supply Company, a sole proprietorship, dealt in the sale of nuts, bolts and tools. Diamond

---

*Judge Ralph P. Edgerton is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

[1]She was found not guilty of a further charge of second degree arson.

spent the major part of his time on the road traveling throughout the Inland Empire selling his company's products.

Moreau, hired to replace the owner's daughter, was to be in charge of local sales, keep the books, make out the payroll, write checks, receive and deposit incoming payments from customers in the bank, also pay accounts, keep the moving inventory, and even perform some janitorial services. In short, she was to manage shop and office, to operate the business in the absence of the owner. Her initial salary was set by Diamond at $550 per month. Defendant testified, however, that shortly after she was hired, Diamond's daughter told her to pay herself at an hourly rate. Diamond denied this but did say her pay was increased to $600 per month in January 1979, and again to $700 at the end of 1979. Defendant was a signatory to both of the company's bank accounts and wrote her own paychecks as well as the rest of the payroll.

During the forepart of 1980, Diamond became concerned about seeming profit shortages and asked his former wife (they had recently reconciled) to go to the business and check the books. She did, discovered some discrepancies, and, as a result, the company books were assembled on Friday, April 11, 1980, in Diamond's office for a review with the company accountant the following Monday. If the latter's findings coincided with their suspicions, Diamond planned to present the matter to the prosecuting attorney. Sunday, April 13, the fire occurred destroying most of the business records. In an effort to reconstruct the books, photocopies of customers' payment checks were sought and obtained. Many of the checks so represented were shown to have been cashed, endorsed by defendant, and not deposited in company bank accounts.

The State's evidence of defendant's alleged misappropriations totaled, in round figures, $10,500. The figure was comprised of $1,400 in company checks cashed by defendant but showed on the check stubs as either voided or blank; $5,000 in customer checks endorsed and cashed by

defendant and not deposited in the bank; $1,400 in other improper checks; and $2,750 in payroll overages. Although defendant claimed a right to overtime pay and explained her pay overages were due to her paying herself time and one–half for alleged overtime, her employer vigorously denied she was entitled to any under the employment agreement.

As the foregoing indicates, although charged with but one count of first degree theft, the State adduced evidence to show three ways the defendant misappropriated funds of her employer. They were (1) by drawing and cashing checks on the general business account without authorization, (2) by cashing accounts receivable checks from company customers, and making personal use of the funds so received, and (3) by overpaying herself from the payroll account. Although the means employed varied slightly, the nature of the criminal actions was the same. Each form of theft was an embezzlement; each was a breach of trust. Defendant had the authority to write checks on the company's general account for business purposes. She lacked authority to write checks to and for herself as loans. To do so without authority was a fraudulent, felonious conversion of her employer's funds and an embezzlement, a crime included in the current theft statute. RCW 9A.56.

Defendant wrote herself two $500 checks and claimed they were loans. Thus, she claimed an intent to repay would be implied and, hence, not an intended permanent deprivation of her employer's funds. Defendant argues that RCW 9A.56, theft and robbery, of the present criminal code combines the crimes of larceny and embezzlement and calls them theft. So, because intent to permanently deprive is a requisite element of the crime of larceny by taking and since embezzlement is now included in the same act, she contends its proof should require the same element, to wit: the intent to permanently deprive. Accordingly, she assigns error to the trial court giving instruction 7, reading as follows:

> The term "intent to deprive," as used in these instructions, need not be an intent to permanently deprive. Temporary deprivation is sufficient, within the meaning of the term as it applies to this charge, and restoration of the property at a later date is not by itself a defense to the crime charged.

Defendant's contention is erroneous. She recognizes that formerly intent to permanently deprive was not an element of the crime of embezzlement. The revised article of the Washington Criminal Code has not changed the rule. As said in *State v. Dorman,* 30 Wn. App. 351, 355–56, 633 P.2d 1340 (1981):

> We find nothing in the current criminal code to suggest that the historical distinction between larceny and embezzlement has been eliminated. In fact, given that RCW 9A.56.010(7)(b) is essentially identical to embezzlement under former RCW 9.54.010(3), we can only conclude that the legislature intended that the distinction be maintained. The trial court did not err in instructing that intent to permanently deprive was not an element of the crime.

Accordingly, in this case the trial court did not err in giving instruction 7.

Defendant further argues that if the rule enunciated by *Dorman* is correct, still, there existed a larceny because she took and used checks from a checkbook normally used by her employer alone. Taking them constituted a larceny, thus requiring the intent to permanently deprive instruction, she says. However, that small checkbook, usually taken on business trips by Diamond for use in meeting travel expenses, was on the same general bank account upon which defendant was authorized to draw checks for expenses of the business. So, even if she purloined the small checkbook, she wrote the checks on an account of which she had been made a signatory. Doing so was lawful if the purpose was lawful. But to make herself an unauthorized loan was an embezzlement and hence an intent to permanently deprive the account's owner was not a necessary element of the crime.

Defendant asserts that since larceny by taking and embezzlement remain two separate and distinct crimes under the present criminal code, her constitutional rights guaranteed under article 1, section 22 of the Constitution of the State of Washington were violated because she was charged with repugnant crimes. That assertion is without merit.

In effect what she is saying is that because the theft statute includes both larceny by taking and embezzlement, she does not know what crime was charged against her. The Legislature has included more than one form of larceny in one chapter of the code, RCW 9A.56, and called both theft. It has defined each in separate paragraphs and sections, thus segregating the different offenses within the act itself. The defendant is adequately apprised of the charge against her when one of the defined crimes within the statute is set forth in the information. In this case the wording of the information is in the language of the statute. The defendant was charged with first degree theft in that she "did wrongfully obtain and exert unauthorized control over property and services, lawful money of the United States, belonging to Independent Bolt and Farm Supply Company, of a value exceeding $1,500, with intent to deprive . . ." This is the language of RCW 9A.56.020(1)(a). The terminology of that section is defined in RCW 9A.56.010(7)(b) and RCW 9A.56.030 fixes the degree in subsection (1)(a).

The new act of 1975 embraces all the forms of larceny and embezzlement. *See* Washington State Crim. Just. Training Comm'n, *Revised Criminal Code Training and Seminar Manual* (compiled and edited by G. Golob & G. Mooney 1976). The principal distinction between larceny and embezzlement, as has been said, is that larceny involves a trespass whereas embezzlement does not. *State v. Smith,* 2 Wn.2d 118, 98 P.2d 647 (1939). Embezzlement involves a violation of a trust. Here, all the acts the State showed the defendant committed were embezzlements. Neither the information nor the proof included repugnant crimes. She was charged and convicted under that section

of the theft statute that defines embezzlement.

Defendant assigns error to the trial judge's refusal to give her requested instructions 9 and 11.[2] Instruction 9 reads:

> The law requires an employer whose employees work more than 40 hours per week to compensate such employees for each hour above 40 hours per week at a rate not less than 1½ times the regular rate at which the person is employed.

Defendant relies on RCW 49.46.130 as the basis for this proposed instruction. However, that section of the code makes specific reference to RCW 49.46.010(5)(c). It specifically excludes individuals employed in a "bona fide executive, administrative, or professional capacity". Since the defendant was not an employee in the terms of the statute, but a manager with administrative duties and powers, she was excluded from the operation of the statute by its own terms. The trial court was under no compulsion to give the requested instruction. The evidence does show that defendant did manage the business in the absence of the owner, which was most of the time. When the boy in the stockroom did not know his nuts and bolts, it became the responsibility of defendant to teach him. Defendant's wide range of duties and responsibilities have previously been mentioned. That she was in charge has been asserted by the owner of the business and acknowledged by her.

Defendant further asserts that the court erred in failing to give her instruction 11, which is a quote of RCW 9A.56.020(2), the statutory defense to theft. The requested instruction reads:

> It is a defense to a charge of theft that the property or service was appropriated openly and avowedly under a good faith claim of title, even though the claim be untenable.

---

[2] If defendant's claim alone that she was entitled to overtime is sufficient to justify the instructions 9 and 11 that she requested, it was not error to omit them for there was ample evidence of other defalcations to establish theft in the first degree by her and support the jury's verdict without considering the question of whether or not she wrongly overpaid herself.

Defendant asserts she was entitled to this instruction in connection with the checks she wrote to herself and claimed as loans. Even assuming that she had the right to make these loans to herself from company funds, that would give her no good faith claim of title. Moreover, the record does not disclose any authorization to the defendant at any time to make herself loans. The court did not err in refusing to give the instruction.

Defendant's exhibit 77 consisted of a burned box containing a large number of ledger cards. The exhibit was offered to allow the jury to determine if certain accounts receivable checks in evidence offered by the State, which the State had indicated were not posted to the business books, were indeed posted to the cards as testified by the defendant. The trial court refused to admit the exhibit as not relevant. If the cards had shown that the checks unaccounted for according to the State's case had actually been posted on the cards, they would have been relevant and admissible. However, it was never claimed nor demonstrated that any of the cards contained entries of any of the checks in question. The exhibit was submitted on the basis only that possibly such entries might appear. It was not a function of the jury to search through hundreds of cards to ascertain if any entries matched the checks in question. It was up to the defendant to establish that the cards did contain the entries suggested. If time was necessary to determine this, it should have been requested. Even after the trial, the defense could have determined whether or not the cards contained such information. Either the defense made no such examination or, if it did, the information desired was not revealed. Without such entries on the cards, they would not be relevant and admissible. ER 402. Again, the trial court committed no error in refusing to admit defendant's exhibit 77 in evidence.

■ Finally, the defendant claims the court erred in ordering restitution in an amount of $10,550, without making a finding that the complaining witness lost that amount to defendant and without holding a hearing on the amount

of restitution to be ordered. Defendant points out that RCW 9A.20.030 only permits the court to order restitution in an amount equal to or less than twice the defendant's gain or victim's loss. However, in this case the court, as part of defendant's sentence, gave her probation and ordered restitution under the Laws of 1981, ch. 136, § 42, p. 489[3] (former RCW 9.95.210). This section of the law authorized the court to order restitution to any person or persons who may have suffered loss or damage by reason of the crime in question. The law does not require a jury finding as to the full extent of the damage suffered by defendant's employer, but in this case there was evidence before the court that there was damage in the sum which it found and ordered to be repaid. The court did not err in its order for restitution. *See State v. Rogers,* 30 Wn. App. 653, 638 P.2d 89 (1981).

Affirmed.

MUNSON, C.J., and GREEN, J., concur.

Reconsideration denied October 3, 1983.

Review by Supreme Court pending March 15, 1984.

---

[3]The pertinent portion of the statute reads:

"The court in the order granting probation and as a condition thereof, may in its discretion imprison the defendant in the county jail for a period not exceeding one year or may fine the defendant any sum not exceeding one thousand dollars plus the costs of the action, and may in connection with such probation impose both imprisonment in the county jail and fine and court costs. The court may also require the defendant to make such monetary payments, on such terms as it deems appropriate under the circumstances, as are necessary . . . (2) to make restitution to any person or persons who may have suffered loss or damage by reason of the commission of the crime in question . . ."