904 P.2d 715 (1995)
128 Wash.2d 85
The STATE of Washington, Petitioner,
v.
Robert Lee AGER, Guy William Jonas and Jean A. Jonas, and each of them, Respondents.
No. 62486-1.
Supreme Court of Washington, En Banc.
November 2, 1995.
*716 Norm Maleng, King County Prosecutor, John E. Bell, Deputy, Seattle, for petitioner State of Washington.
Scott A. Reiman, Seattle, Appelwick, Trickey & Lukevich, Michael J. Trickey, Seattle, Lenell R. Nussbaum, Seattle, for respondents.
GUY, Justice.
The court granted review in this case to resolve an apparent conflict between decisions from two divisions of the Court of Appeals, State v. Moreau, 35 Wash.App. 688, 669 P.2d 483 (Div. III 1983), rev. denied, 102 Wash.2d 1019 (1984), and State v. Ager, 75 Wash.App. 843, 880 P.2d 1017 (Div. I 1994). Those decisions arguably set forth different standards to be applied by trial courts when determining whether sufficient evidence exists in an embezzlement case to support a jury instruction on the good faith claim of title defense set forth in RCW 9A.56.020(2).
We reverse the Court of Appeals and hold that in order for a defendant in an embezzlement case to be entitled to an instruction on the good faith claim of title defense, the defendant must present evidence (1) that the property was taken openly and avowedly and (2) showing circumstances which support an inference that there was some legal or factual basis upon which the defendant, in good faith, based a claim of title to the property taken.
In granting the State's petition for review, we limited the issue on review to that involving the good faith claim of title defense.[1]
The issue before the court is a legal one and it does not require a comprehensive understanding *717 of the complex facts and issues involved in this case. The following facts are pertinent to the issue involved but are not exhaustive.
The three Defendants were involved in the collapse of Life Insurance Company of America (LICA), a Washington insurance company. Defendants Robert Ager and Guy Jonas purchased a controlling interest in LICA in 1980.[2] Guy Jonas's wife, Defendant Jean Jonas, was employed as accountant and bookkeeper for the insurance company shortly before Defendants Ager and Guy Jonas paid the purchase price for their interest in the company. The funds ultimately used to pay the purchase price came from the funds of the company itself.
During the next six years Defendant Ager, as Chief Executive Officer, and Defendant Guy Jonas, as Chief Administrative Officer, received substantial sums from the insurance company beyond their authorized salaries, bonuses and management fees. These funds were taken by Defendants even though LICA was in desperate financial shape and was unable in 1986-87 to pay life and annuity benefit claims, health insurance claims, and even its operating expenses. In 1986 the Defendants were withdrawing approximately $100,000 a month from the company. This amount was far in excess of salaries, bonuses and management fees authorized. The company books reflect the payments to Defendants in various ways. However, the overwhelming dollar amount of property received by Defendants consisted of what the Defendants termed "advances". After receiving the advances from LICA, Defendants donated mortgages or other property to the insurance company. The advances were then written off against those donated properties, resulting in reduced or zero net balances owed to LICA by Defendants. Testimony showed the properties donated were overvalued, nonperforming or worthless.
From 1981 through February 1987, LICA did not purchase any income-producing assets and had no investment program. The Insurance Commissioner, pursuant to a court order, seized control of LICA on February 5, 1987. At that time the company books showed $17 million in investments. However, only about $3.5 million of these investments were bringing money into the company. The company was placed in receivership at the end of February 1987, and the receivership order was amended to an order for liquidation in March 1987.
After the Insurance Commissioner took control of LICA, Defendants were charged with conspiracy to commit theft; theft in the first degree (embezzlement); and knowingly, and with an intent to deceive, exhibiting false statements to the Insurance Commissioner.
Defendants were tried twice. At the first trial Guy Jonas was convicted of exhibiting false accounts in violation of RCW 48.06.190, a felony.[3] The jury was unable to reach a unanimous decision on any of the other counts. A second trial began a few months later.
At both trials Defendants took the position that the funds were taken openly and under a good faith claim of title. The Defendants agreed that the insurance industry is highly regulated and that the funds appropriated could not legally be considered "loans" under the insurance code, RCW title 48, which requires loans to officers or directors to be approved by a two-thirds' vote of the company's directors and to be secured. RCW 48.07.130. Instead, Defendants argued that the funds were "advances" and, as such, the appropriations, although made without board approval, were authorized by the insurance code at RCW 48.12.020(3). That statutory provision, which is the only one in the insurance code to mention advances, states:
In addition to assets impliedly excluded under RCW 48.12.010, the following expressly shall not be allowed as assets in *718 any determination of the financial condition of an insurer:
....
(3) Advances to officers (other than policy loans or loans made pursuant to RCW 48.07.130), whether secured or not, and advances to employees, agents and other persons on personal security only.
In essence, Defendants' theory on the good faith claim of title defense was that the statute's mention of advances resulted in a recognition that advances to officers are authorized and that because they were authorized to receive advances, Defendants had a claim of title to the funds they took. Additionally, they argued this claim of title was made in good faith and the funds were appropriated openly.
Although it had given an instruction on the good faith claim of title defense at the first trial, the trial court refused to give a jury instruction on the defense at the second trial, ruling that there was insufficient evidence to support the instruction. The trial court ruled that a defendant must present some factual basis for the good faith belief that he or she was authorized to make the disbursements, and it determined there was no factual basis presented in this case. The Defendants were subsequently convicted as charged. Each of the Defendants was given an exceptional sentence and the Defendants were ordered jointly and severally to pay restitution in the amount of $3.5 million.
The Defendants appealed their convictions, sentences and the restitution order. The appeals were consolidated in the Court of Appeals, Division I.
The Court of Appeals affirmed Defendants Ager's and Jean Jonas's convictions on the charge of exhibiting false accounts.[4] The Court of Appeals then reversed the conspiracy and theft convictions of all three defendants, vacating the restitution order and the exceptional sentences, and remanding for a new trial.[5] The Court of Appeals listed four grounds for reversing the trial court. State v. Ager, 75 Wash.App. at 847-48, 880 P.2d 1017. Only one of the reasons for reversal is before this court, that is the Court of Appeals' conclusion that the trial court erred in refusing to instruct the jury on the good faith claim of title defense.

ISSUE
In an embezzlement case, where the defendant has lawful control over the funds taken, must the defendant present some evidentiary basis to support a belief that the defendant had title to the funds before an instruction on the good faith claim of title defense is justified?

DECISION
Embezzlement is a statutory crime. It differs from the historically common law crime of theft, which requires a trespass in the taking, in that embezzlement occurs where property that is lawfully in the taker's possession is fraudulently or unlawfully appropriated by the taker. See generally, 2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 8.6(a) at 368-69 (1986) (hereafter LaFave & Scott); State v. Gillespie, 41 Wash.App. 640, 643, 705 P.2d 808 (1985), rev. denied, 106 Wash.2d 1006 (1986). Unlike theft by taking, embezzlement involves a violation of trust and does not require proof of intent to permanently deprive the owner of the property taken. State v. Linden, 171 Wash. 92, 112, 17 P.2d 635 (1932); State v. Gillespie, 41 Wash.App. at 643, 705 P.2d 808; State v. Vargas, 37 Wash.App. 780, 782, 683 P.2d 234 (1984).
Embezzlement is included within this state's general theft statute. RCW 9A.56. The statute sets out four distinct types of theft, including theft by taking, embezzlement, theft by deception, and appropriation of lost or misdelivered property. State v. Vargas, 37 Wash.App. at 782, 683 P.2d 234. *719 RCW 9A.56.020(1)(a) defines theft by embezzlement as follows:
(1) "Theft" means:
(a) To wrongfully obtain or exert unauthorized control over the property or services of another or the value thereof, with intent to deprive him of such property or services[.]
The crime is further defined in RCW 9A.56.010(7)(b), which provides:
(7) "Wrongfully obtains" or "exerts unauthorized control" means:
....
(b) Having any property or services in one's possession, custody or control as bailee, factor, pledgee, servant, attorney, agent, employee, trustee, executor, administrator, guardian, or officer of any person, estate, association, or corporation, or as a public officer, or person authorized by agreement or competent authority to take or hold such possession, custody, or control, to secrete, withhold, or appropriate the same to his or her own use or to the use of any person other than the true owner or person entitled thereto[.]
The defense raised here is set forth in RCW 9A.56.020(2) as follows:
In any prosecution for theft, it shall be a sufficient defense that the property or service was appropriated openly and avowedly under a claim of title made in good faith, even though the claim be untenable.
This defense negates the element of intent to steal by providing that a defendant cannot be guilty of theft if the defendant takes property from another "under the good faith belief that he is the owner, or entitled to the possession, of the property." State v. Hicks, 102 Wash.2d 182, 184, 683 P.2d 186 (1984) (theft by forcible taking).
In its discussion of the defense, LaFave & Scott notes that the mental state required for embezzlement is an intent to fraudulently convert:
One who converts the property of another which is in his lawful possession is not guilty of embezzlement (for his conversion is not fraudulent) if, when he converts, he honestly believes the property is his own or is nobody's, or he otherwise honestly believes he is authorized to convert it. It should make no difference whether this bona fide claim of right is the result of a mistake of fact or a mistake of law, nor whether the mistake is reasonable or unreasonable so long as it is real, for in any such event he lacks an intent to defraud.
LaFave & Scott § 8.6(f)(1), at 379 (footnotes omitted). See also People v. Vineberg, 125 Cal.App.3d 127, 137-38, 177 Cal.Rptr. 819 (1981), cert. denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 468 (1982).
Even where courts have accepted any mistake of law or fact as a valid basis for the defense of good faith claim of title in an embezzlement case, a defendant is entitled to an instruction on the defense only where the evidence at trial supports a reasonable inference that the claimed belief was held in good faith. See People v. Vineberg, 125 Cal. App.3d at 137, 177 Cal.Rptr. 819.
A defendant in a criminal case is generally entitled to a jury instruction on the defense theory of the case. If evidence supports an instruction on the good faith claim of title defense, it is reversible error to refuse to give the instruction. State v. Hicks, 102 Wash.2d at 186-87, 683 P.2d 186. However, a defendant is not entitled to an instruction which inaccurately represents the law or for which there is no evidentiary support. See, e.g., State v. Staley, 123 Wash.2d 794, 803, 872 P.2d 502 (1994). It is error for a trial court to give an instruction which is not supported by the evidence. State v. Hoffman, 116 Wash.2d 51, 110-11, 804 P.2d 577 (1991); State v. Hughes, 106 Wash.2d 176, 191, 721 P.2d 902 (1986).
Both State v. Moreau, 35 Wash.App. 688, 669 P.2d 483 (1983), rev. denied, 102 Wash.2d 1019 (1984) and State v. Ager, 75 Wash.App. 843, 880 P.2d 1017 (1994), the two Court of Appeals decisions in conflict on the issue involved here, recognize that a defendant is entitled to a jury instruction if the evidence supports the good faith claim of title. The decisions disagree as to what constitutes sufficient evidence to support the defense.
In Moreau, the defendant was employed by a farm supply company to be in charge of *720 local sales, to keep the books, make out the payroll, write checks, receive and deposit incoming payments from customers, pay accounts, and generally manage the shop and office and operate the business in the absence of the owner. She wrote her own pay check as well as the rest of the payroll. Defendant wrote herself two checks for $500 each on the business account. Although she did not have express authority to make loans of company money, she claimed that the two checks were loans and that she intended to repay them. Moreau, 35 Wash. App. at 690-91, 669 P.2d 483. The Court of Appeals (Division III) first held that an intent to permanently deprive the account's owner was not a necessary element of the crime of embezzlement and therefore an intent to repay was not relevant. The Moreau court went on to hold that the defendant was not entitled to an instruction on the good faith claim of title defense based solely on her claim that she considered the funds taken to be loans. The court stated: "[T]he record does not disclose any authorization to the defendant at any time to make herself loans." Moreau, 35 Wash.App. at 695, 669 P.2d 483.
Division III, therefore, would require some legal or factual basis for the belief that a claim of title exists before instructing the jury on the defense.
In contrast, Division I of the Court of Appeals would accept a defendant's statement that he or she believed he had a right to the property and then let the jury decide whether this subjective belief was held in good faith, so long as there was evidence that the property was taken openly. Thus, the Court of Appeals in Ager held that the evidence before the trial court in this case was sufficient to support an instruction on the good faith claim of title defense in that: (1) "Ager and Jonas, through Jean's testimony, took the position that they were merely taking advances against their salaries, production bonuses, reimbursements for legitimate business expenses, and interest on their surplus contribution certificates." Ager, 75 Wash.App. at 861, 880 P.2d 1017 (footnote omitted). (2) The appropriations were arguably open and avowed because they were listed as advances in Jean Jonas's records, even though this evidence was disputed. (3) Whether the appropriations were open and avowed and taken in good faith presents a jury question. Ager, 75 Wash.App. at 861-62, 880 P.2d 1017.
As noted above, the trial court in the present case had determined that there was no factual basis for Defendants' belief that they were authorized to withdraw vast amounts of money as advances. (Neither Guy Jonas nor Robert Ager testified at trial.) While the Court of Appeals did not disagree with the trial court's ruling in this regard, it held that the evidence of openly taking the property was sufficient evidence to support the giving of the good faith claim of title instruction.
The good faith claim of title defense has at least two elements: (1) an open and avowed taking of property and (2) a good faith claim of title to the property. In other criminal cases in which defenses requiring proof of multiple elements are raised, the appellate courts of this state have required at least some evidentiary support for each element. For example, where a diminished capacity (intoxication) instruction is sought, the defendant must show (1) the crime charged has as an element a particular mental state, (2) there is substantial evidence of drinking, and (3) evidence that the drinking affected defendant's ability to acquire the required mental state. State v. Gallegos, 65 Wash. App. 230, 238, 828 P.2d 37, rev. denied, 119 Wash.2d 1024, 838 P.2d 690 (1992). Where evidence on any element is lacking, the instruction need not be given. Gallegos, 65 Wash.App. at 239, 828 P.2d 37; State v. Griffin, 100 Wash.2d 417, 670 P.2d 265 (1983).
Similarly, a defendant in an embezzlement case who is relying on the good faith claim of title defense must do more than assert a vague right to property. The defendant must present evidence (1) that the property was taken openly and avowedly and (2) that there was some legal or factual basis upon which the defendant, in good faith, based a claim of title to the property taken, even though the claim of title may prove to be untenable. See, e.g., People v. Vineberg, 125 Cal.App.3d at 137, 177 Cal.Rptr. 819 (assertion *721 by an accused that he believed he had the right to appropriate the property of another does not compel the giving of the good faith claim of title instruction if the circumstances do not indicate such belief was held in good faith); People v. Stewart, 16 Cal.3d 133, 544 P.2d 1317, 127 Cal.Rptr. 117 (1976) (trial court required to give the good faith claim of title instruction where evidence showed open and avowed taking and defendant's belief, based on statements of one of the owners, that he had a right to take the funds).
In the present case Defendants presented evidence that they appropriated the funds openly and avowedly, thus presenting evidence on the first element of the defense. The evidence introduced or offered to support the second element was (1) a statute providing that advances to officers may not be listed as assets of an insurance company, (2) Defendants' recording of the takings as advances, and (3) the open and avowed manner in which the funds were taken. The trial court ruled that the Defendants' "advance" theory was not supported by any evidence from which a jury could reasonably infer that the Defendants' claim they had a right to appropriate $3.5 million was made in good faith.
Defendants here claim the insurance code gave them a legal basis for believing they had a right to the "advances" they took. The statutory provision on which Defendants relied, RCW 48.12.020(3), does not create a right in employees, directors or officers of insurance companies to take money from the company as an "advance". Nor is there any language in the statute that would support such an interpretation.
Statutory recognition that an insurance company may authorize advances to certain officers, directors or employees, and statutory accounting measures regarding those advances do not create a right in any individual employee or agent to take an advance of any desired amount for any desired purpose. There is no evidence in this case that the insurance company determined it would authorize advances to officers or other employees. The evidence presented in this case established no legal or factual basis from which a jury could infer a good faith claim of title.

CONCLUSION
We hold that before a defendant in an embezzlement case is entitled to a jury instruction on the good faith claim of title defense set forth in RCW 9A.56.020(2), the defendant must present evidence (1) that the taking of property was open and avowed and (2) showing circumstances which arguably support an inference that the defendant has some legal or factual basis for a good faith belief that he or she has title to the property taken.
Evidence which might give rise to an inference that Defendants' belief that they had a right to take and use the funds was held in good faith could include past practices of the company with respect to advances, acts showing that past advances of this nature were approved or acknowledged by the board of directors, or statements by directors of the company that might have been interpreted by Defendants as authorizing them to take advances, rather than loans, from the insurance company. Here, the trial court correctly determined that the evidence presented on the second element of the defense did not support an instruction on Defendants' theory of the case.
That part of the Court of Appeals decision which holds that the trial court erred in refusing to instruct the jury on the statutory defense of good faith claim of title is reversed.
DURHAM, C.J., and DOLLIVER, SMITH, JOHNSON, MADSEN, ALEXANDER and PEKELIS, JJ., concur.
TALMADGE, J., not participating.
NOTES
[1] We denied the State's petition for review with respect to the remainder of the issues raised. Thus, despite our resolution of the issue before us, the case will be remanded for a new trial. We also denied Defendant Robert L. Ager's Cross-Petition for Review.
[2] At the time of purchase the insurance company was known as General Security Life. The name was later changed to Life Insurance Company of America.
[3] RCW 48.06.190 provides: "Every person who, with intent to deceive, knowingly exhibits any false account, or document, or advertisement, relative to the affairs of any insurer, or of any corporation or syndicate of the kind enumerated in RCW 48.06.030, formed or proposed to be formed, shall be guilty of a felony."
[4] Guy Jonas appealed his conviction, his exceptional sentence and the restitution order. His assignments of error in the appeal did not relate to his conviction for knowingly exhibiting false accounts, and the Court of Appeals did not address his conviction for that crime.
[5] The Court of Appeals noted that the Defendants had all served their sentences by the time of oral argument in that court. State v. Ager, 75 Wash. App. 843, 847 n. 4, 880 P.2d 1017 (1994).