IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 73954-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DONNA ELIZABETH GREEN, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 19, 2017 |

SCHINDLER, J. — Donna Elizabeth Green seeks reversal of the jury convictions for one count of theft by color or aid of deception in violation of RCW 9A.56.020(1)(b) and .030(1)(a) and five counts of forgery in violation of RCW 9A.60.020(1)(b). Green contends the court erred by (1) refusing to instruct the jury on the statutory defense of good faith claim of title, (2) rejecting a supplemental jury instruction on knowledge, and (3) denying motions to substitute counsel. Green also asserts prosecutorial misconduct in rebuttal argument deprived her of the right to a fair trial. We affirm.

FACTS

Donna Mae Green received Social Security and survivor benefits. Each month, the Social Security Administration (SSA) deposited approximately $700 directly in her Bank of America checking account. Donna Mae Green was the only "authorized signer" on the account.

Donna Mae Green died on May 13, 2012. Donna Mae Green did not designate a "representative payee" to receive SSA benefits on her behalf. Because SSA was not notified of her death, SSA continued to deposit approximately $700 in her Bank of America account.

Donna Elizabeth Green (Green) is the daughter of Donna Mae Green. From May 8, 2012 until January 4, 2014, Green wrote approximately 24 checks to herself using her mother's Bank of America account. Green signed the checks as "Donna Green" and Bank of America cashed the checks.

In December 2013, the "death match alert program" notified SSA that Donna Mae Green died on May 13, 2012. SSA contacted Bank of America to recover the money deposited in the account after her death. Bank of America informed SSA that the remaining balance in the account was approximately $2,000.

In May 2014, SSA investigator Scott Henderson met with Green. Green said she knew SSA continued to deposit money in her mother's account after her mother died. Green told Henderson that she wrote checks on the account and used the money to pay expenses.

The State charged Green with one count of theft by color or aid of deception in the first degree in violation of RCW 9A.56.020(1) and .030(1)(a) and five counts of forgery in violation of RCW 9A.60.020(1)(b). Green entered a plea of not guilty.

SSA investigator Henderson and Bank of America fraud investigator Paul Lemon testified at trial on behalf of the State.

Henderson testified that Green told him that she and her mother "both opened accounts at the same time at Bank of America" and "she wasn't sure whether she was

2

the signature on her mother's account." Green said she knew SSA continued to deposit Social Security benefits in the Bank of America account after her mother died and admitted using the money "for her own personal use." When Henderson asked how much money she withdrew, Green admitted she withdrew "about $19,000" in Social Security benefits from her deceased mother's Bank of America account.

Henderson testified that Green told him she thought the Social Security payments would stop "when they were supposed to stop." When asked whether she attempted to contact SSA, Green told Henderson that she thought SSA "should have contacted her."

Bank of America fraud investigator Lemon testified that Donna Mae Green was the only "authorized signer" on the Bank of America account. Lemon stated that Bank of America does not allow someone who is not authorized to sign checks on the account. Lemon said video surveillance footage showed Green cashing one of the checks on her mother's account. The court admitted still photographs from the surveillance video into evidence.

Green did not testify or present any other evidence. The court refused to instruct the jury on the defense of good faith claim of title or give a supplemental instruction on knowledge. The court used 11 <u>Washington Practice: Washington Pattern Jury Instructions: Criminal</u> (3d ed. 2008) (WPIC) to instruct the jury on the charged crimes of theft by deception and forgery and the meaning of "knowledge."

The jury found Green guilty of one count of theft by color or aid of deception in the first degree and five counts of forgery. The court imposed a first time offender sentence of 100 hours community restitution and 6 months community supervision.

ANALYSIS

Good Faith Claim of Title

Green contends the court erred in refusing to instruct the jury on the defense of good faith claim of title. We review de novo the refusal to give an instruction based on a ruling of law. State v. Walker, 136 Wn.2d 767, 772, 966 P.2d 883 (1998); State v. Sullivan, 196 Wn. App. 277, 291, 383 P.3d 574 (2016).

The theft statute, RCW 9A.56.020(1), "sets out four distinct types of theft, including theft by taking, embezzlement, theft by deception, and appropriation of lost or misdelivered property." State v. Ager, 128 Wn.2d 85, 91, 904 P.2d 715 (1995). RCW 9A.56.020(1)(b) defines theft by deception as follows:

> "Theft" means . . . [b]y color or aid of deception to obtain control over the property or services of another or the value thereof, with intent to deprive him or her of such property or services.

Consistent with the statute, the court instructed the jury on theft by deception in the first degree. Jury instruction 7 states:

> To convict the defendant of the crime of theft in the first degree, as charged in Count One, each of the following elements of the crime must be proved beyond a reasonable doubt:
> (1) That between May 13, 2012 and February 3, 2014, the defendant, by color or aid of deception, obtained control over property of another or the value thereof;
> (2) That the property exceeded $5000 in value;
> (3) That the defendant intended to deprive the other person of the property;
> (4) That the defendant's acts were part of a common scheme or plan, a continuing criminal impulse, or a continuing course of criminal conduct; and
> (5) That the acts occurred in the State of Washington.
> If you find from the evidence that elements (1), (2), (3), (4), and (5), have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to Count One.
> On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of elements (1), (2), (3), (4), or (5)[,] then

it will be your duty to return a verdict of not guilty as to Count One.

RCW 9A.56.020(2)(a) sets forth the defense of good faith claim of title. RCW 9A.56.020(2)(a) states:

> In any prosecution for theft, it shall be a sufficient defense that . . . [t]he property or service was appropriated openly and avowedly under a claim of title made in good faith, even though the claim be untenable.

Green proposed a jury instruction based on RCW 9A.56.020(2)(a):

> It is a defense to a charge of theft that the property or service was appropriated openly and avowedly under a good faith claim of title, even if the claim is untenable. The State has the burden of proving beyond a reasonable doubt that the defendant did not appropriate the property openly and avowedly under a good faith claim of title. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty as to the charge of Theft in the First Degree.

In State v. Stanton, 68 Wn. App. 855, 868, 845 P.2d 1365 (1993), we held a trial court is not required to instruct the jury on the defense of good faith claim of title where the charge is "theft by deception." Because the State must prove and the jury must find that the defendant obtained control of property of another by " 'color or aid of deception,' " such a finding establishes the defendant did not obtain control openly and avowedly. Stanton, 68 Wn. App. at 868 (quoting RCW 9A.56.020(1)(b)).

> The trial court was not required to give the proposed instruction where the charge was theft by deception. Before the jury can convict on such a charge, it must find that the defendant obtained control over the property of another "by color or aid of deception." RCW 9A.56.020(1)(b). Such a finding necessarily includes an implied finding that the defendant did not obtain control over the property "openly and avowedly under a good faith claim of title."[ See RCW 9A.56.020(2)(a).] The jury need not consider the same finding a second time, and, thus, the court need not instruct on the defense of good faith claim of title.

Stanton, 68 Wn. App. at 868.[1]

---

[1] Emphasis in original.

In <u>State v. Casey</u>, 81 Wn. App. 524, 915 P.2d 587 (1996), we adhered to the decision in <u>Stanton</u> and rejected the argument that the legislature intended to make the defense of good faith claim of title available for theft by deception.

> We do not agree that this statute requires instruction on a defense of a good faith claim of title in cases where, as here, it is logically impossible to convict without implicitly rejecting any claim of good faith. A jury cannot convict on a charge of theft by deception without first rejecting any claim of good faith by the defendant. We therefore reiterate the conclusion we reached in <u>Stanton</u>: The good faith claim of title is inapplicable as a matter of law where the charge is theft by deception.

<u>Casey</u>, 81 Wn. App. at 527.

The cases Green relies on to argue she is entitled to an instruction on the good faith claim of title defense are inapposite. <u>See</u> <u>Ager</u>, 128 Wn.2d at 92 (embezzlement); <u>State v. Acosta</u>, 101 Wn.2d 612, 616, 683 P.2d 1069 (1984) (assault); <u>State v. McCullum</u>, 98 Wn.2d 484, 492, 656 P.2d 1064 (1983) (murder); <u>State v. Hanton</u>, 94 Wn.2d 129, 132, 614 P.2d 1280 (1980) (manslaughter).

We adhere to the analysis in <u>Stanton</u> and <u>Casey</u> and conclude the court did not err in refusing to instruct the jury on the defense of good faith claim of title.

<u>Jury Instruction on Knowledge</u>

Green claims the trial court erred by refusing to give a supplemental jury instruction that states the jury must find "actual knowledge." Green's proposed jury instruction states:

> If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury may only find that the person acted with knowledge of that fact if based on the evidence the jury is satisfied that the person had actual knowledge of that fact.

The court used WPIC 10.02 to instruct the jury on the meaning of knowledge. Jury instruction 19 states:

> A person knows or acts knowingly or with knowledge with respect to a fact, circumstance or result when he or she is aware of that fact, circumstance or result. It is not necessary that the person know that the fact, circumstance or result is defined by law as being unlawful or an element of a crime.
> If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.
> When acting knowingly is required to establish an element of a crime, the element is also established if a person acts intentionally.

Green concedes WPIC 10.02 does not "misstate the law." We agree. In State v. Leech, 114 Wn.2d 700, 710, 790 P.2d 160 (1990), the Washington Supreme Court expressly approved the use of WPIC 10.02 to instruct the jury on the meaning of "knowledge." See also State v. Allen, 182 Wn.2d 364, 372, 341 P.3d 268 (2015) (WPIC 10.02 "correctly stated the law regarding 'knowledge.' ").

Green relies on Allen to argue the court erred in refusing to give the supplemental instruction on knowledge. In Allen, the State charged the defendant as an accomplice with aggravated murder in the first degree. Allen, 182 Wn.2d at 369-70. The State had the burden of proving accomplice liability and that the defendant had "actual knowledge" of the crime. Allen, 182 Wn.2d at 371. The court instructed the jury on knowledge using WPIC 10.02.[2] Contrary to the jury instruction that correctly defined the meaning of knowledge, in closing argument, the prosecutor "repeatedly and

---

[2] The knowledge instruction in Allen stated:

> "A person knows or acts knowingly or with knowledge with respect to a fact or circumstance when he or she is aware of that fact or circumstance.
> "If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact."

Allen, 182 Wn.2d at 372.

improperly" used the phrase "should have known." Allen, 182 Wn.2d at 371. The court held the argument was improper and misleading because a juror could misinterpret the culpability statute and find the defendant should have known. Allen, 182 Wn.2d at 380, 374.

> We have recognized that a juror could understandably misinterpret Washington's culpability statute to allow a finding of knowledge "if an ordinary person in the defendant's situation would have known" the fact in question, or in other words, if the defendant "should have known."

Allen, 182 Wn.2d at 374 (quoting State v. Shipp, 93 Wn.2d 510, 514, 610 P.2d 1322 (1980)).

Here, unlike in Allen, the culpability statute is not implicated, and the record shows the prosecutor did not make an improper or misleading argument on the meaning of knowledge.[3] We conclude the court did not err in refusing to give the defense proposed jury instruction and instructing the jury on the definition of "knowledge" using WPIC 10.02.

Substitution of Counsel

Green contends the court erred in denying motions to substitute counsel. The Sixth Amendment to the United States Constitution guarantees in "all criminal prosecutions, the accused shall . . . have the assistance of counsel for [her] defense." But a defendant " 'does not have an absolute, Sixth Amendment right to choose any particular advocate.' " State v. Varga, 151 Wn.2d 179, 200, 86 P.3d 139 (2004) (quoting State v. Stenson, 132 Wn.2d 668, 733, 940 P.2d 1239 (1997)). The essential aim of the Sixth Amendment is to guarantee an effective advocate for a criminal

---

[3] We also note that unlike in Allen, the prosecutor did not improperly use the phrase "should have known" when describing the definition of knowledge. As defense counsel conceded in closing argument, "I think [the prosecutor] did a very fair and reasonable job of explaining that [knowledge] instruction to you."

defendant "rather than to ensure that a defendant will inexorably be represented by the lawyer whom [s]he prefers." Wheat v. United States, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988).

"Whether an indigent defendant's dissatisfaction with [her] court-appointed counsel is meritorious and justifies appointment of new counsel is a matter within the discretion of the trial court." State v. DeWeese, 117 Wn.2d 369, 376, 816 P.2d 1 (1991). To warrant substitution of counsel, a defendant must show good cause: " 'such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant.' " Varga, 151 Wn.2d at 200 (quoting Stenson, 132 Wn.2d at 734). A general loss of confidence in defense counsel by itself is not sufficient cause for substitution. Stenson, 132 Wn.2d at 734. The attorney and the defendant must be "so at odds as to prevent presentation of an adequate defense." Stenson, 132 Wn.2d at 734. Because the record does not show either an irreconcilable conflict in interest or a complete breakdown in communication, the court did not abuse its discretion by denying Green's motions to substitute counsel.

Prosecutorial Misconduct

Green contends prosecutorial misconduct during rebuttal argument deprived her of the right to a fair trial by shifting and mischaracterizing the burden of proof and appealing to the passion and prejudice of the jury.

To prevail on a claim of prosecutorial misconduct, a defendant must show that the conduct was both improper and prejudicial. State v. Fisher, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). We review an allegedly improper comment in the full context of the arguments, issues, evidence, and instructions. State v. Russell, 125 Wn.2d 24, 85-

9

86, 882 P.2d 747 (1994).

Because the defendant has no duty to present evidence, a prosecutor cannot comment on the defendant's failure to present evidence. State v. Thorgerson, 172 Wn.2d 438, 453, 258 P.3d 43 (2011). A prosecutor should not make arguments calculated to inflame the passion or prejudice of the jury. In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 704, 286 P.3d 673 (2012). However, the prosecutor is entitled in rebuttal argument to make a fair response to the defense closing argument. Russell, 125 Wn.2d at 87. Because the prosecutor's remarks during rebuttal argument were in fair response to the defense closing argument, Green cannot show prosecutorial misconduct.

We affirm.

WE CONCUR:

_Schindler, J._

_Spearman, J._          _Becker, J._