# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 75071-2-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| RICHARD WHITAKER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 24, 2017 |

SPEARMAN, J. — A jury convicted Richard Whitaker of violating the Uniform Controlled Substances Act, chapter 69.50 RCW, by possessing with intent to deliver cocaine. He challenges his conviction, primarily arguing that the trial court erred by refusing to give a proposed jury instruction supporting his theory of the case and by admitting the improper opinion testimony of a police officer that reflected on his guilt. The jury instructions adequately conveyed the applicable law and allowed Whitaker to argue his theory of the case. The testimony in question did not amount to an impermissible opinion on Whitaker's guilt. We affirm.

## FACTS

According to the testimony at Whitaker's trial, on September 27, 2013, the west precinct anti-crime team was conducting a "'see-pop'" operation in the Belltown neighborhood in downtown Seattle. Report of Proceedings (RP) at 83. Officer Forrest

Lednicky was standing on top of a building on Second Avenue and Virginia, using binoculars, and looking for drug transactions taking place on the streets below.

Just before 2:00 a.m., Officer Lednicky observed a man, later identified as Richard Whitaker, standing on Second Avenue and looking up and down the street. After a few minutes, two individuals approached him, one of whom had a brief conversation with Whitaker. The two individuals then stepped away, conferred, and both removed money from their pockets.

Then one of the individuals approached Whitaker again, and together, they walked a short distance while continually looking around. Officer Lednicky then saw Whitaker remove a clear plastic baggie from the waistband of his pants that contained several small white colored rocks. Whitaker removed one of the rocks from the baggie and handed it to the individual. The individual removed the rock from plastic wrap and put the rock in his mouth. Officer Lednicky did not see any money change hands, nor did he see where the two individuals went following the apparent transaction with Whitaker. Officer Lednicky then called the arrest team and provided Whitaker's physical description and location. Officer Lednicky continued watching Whitaker until the arrest team officers contacted and arrested him.

Whitaker had $359 in cash on his person when he was arrested. He also had a plastic baggie containing three and a half grams of suspected cocaine in a hidden pocket in front of the zipper of his pants.

A forensic scientist employed by the Washington State Patrol tested one of the ten white rocks found on Whitaker's person when he was arrested. The testing revealed the presence of cocaine.

The jury convicted Whitaker of possession of a controlled substance with intent to deliver. He appeals.

## DISCUSSION

Proposed Jury Instruction

According to the instructions provided to the jury, to convict Whitaker of possession of a controlled substance with intent to deliver, the jury was required to find beyond a reasonable doubt:

(1) That on or about the [sic] September 27, 2013, the defendant possessed a controlled substance;

(2) That the defendant possessed the substance with the intent to deliver a controlled substance; and

(3) That the acts occurred in the State of Washington.

See RCW 69.50.401(1). Clerk's Papers (CP) at 54.

The jury was also instructed that, "[c]ocaine is a controlled substance," that "[a] person acts with intent or intentionally when acting with the objective or purpose to accomplish a result that constitutes a crime," and that "[d]eliver or delivery means the actual or attempted transfer of a controlled substance from one person to another. CP at 55, 57.

Whitaker proposed the following additional jury instruction:

An inference of an intent to deliver cannot be based on mere possession of a controlled substance, absent other facts and circumstances.

CP at 33.

The court declined to give Whitaker's proposed instruction. While acknowledging that proof of the possession of drugs alone does not establish an intent to deliver, the

3

court reasoned that the instruction was unnecessary because the "to convict" and other definitional instructions clearly set forth the applicable law and nothing in the instructions would prevent the defense from arguing that the State presented insufficient evidence of intent to deliver. The court further indicated that it was not inclined to give the instruction because the phrase "mere possession" was a "loaded statement." RP at 213.

Whitaker challenges the court's ruling. He argues that the proposed instruction was essential to his theory of the case and without the instruction, there is a "realistic danger" that the jury convicted him based solely on evidence of drug possession. Appellant's Brief at 8.

We review jury instructions as a whole to determine if the instructions properly inform the jury of the applicable law, are not misleading, and allow the parties to argue their theories of the case. State v. Embry, 171 Wn. App. 714, 756, 287 P.3d 648 (2012). We review the adequacy of jury instructions de novo and the trial court's choice of jury instructions for an abuse of discretion. Id.; State v. Hathaway, 161 Wn. App. 634, 647, 251 P.3d 253 (2011).

A trial court is not required to give a proposed instruction if the instruction does not properly state the law or the evidence does not support it. State v. Ager, 128 Wn.2d 85, 93, 904 P.2d 715 (1995). And the trial court may refuse a specific instruction when a more general instruction adequately explains the law and allows each party to argue its theory of the case. Hathaway, 161 Wn. App. at 647. If the jury instructions are otherwise sufficient, the court need not give a party's proposed instruction, even though that instruction may be an accurate statement of the law. City of Seattle v. Pearson, 192 Wn. App. 802, 821, 369 P.3d 194 (2016). The trial court may decide which instructions are

necessary to "guard against misleading the jury." Gammon v. Clark Equip. Co., 104 Wn.2d 613, 617, 707 P.2d 685 (1985).

As the trial court correctly observed, the law is well settled that possession of drugs, without more, does not raise an inference of the intent to deliver. State v. Reichert, 158 Wn. App. 374, 391, 242 P.3d 44 (2010). The State must prove at least one additional factor that indicates an intent to deliver. State v. Goodman, 150 Wn.2d 774, 783, 83 P.3d 410 (2004); State v. Hagler, 74 Wn. App. 232, 236, 872 P.2d 85 (1994); State v. Brown, 68 Wn. App. 480, 484, 843 P.2d 1098 (1993). Specific intent can be inferred as a logical probability from all the facts and circumstances. State v. Davis, 79 Wn. App. 591, 594, 904 P.2d 306 (1995).

Contrary to Whitaker's argument, the jury instructions set forth above accurately described the law. The instructions properly required that in order to convict Whitaker as charged, the State had to prove not only that he possessed cocaine but that he did so with the specific intent to deliver. The jury instructions thus created no risk that the jury would convict Whitaker on the basis of legally insufficient evidence. The instructions provided a legal basis for Whitaker to argue his theory—that the State presented insufficient proof of his intent to deliver the cocaine he possessed when arrested.

Additional facts that may support an inference of intent to deliver can include substantial amounts of cash, scales, cell phones, address books, baggies, and materials used in narcotics manufacture. State v. Zunker, 112 Wn. App. 130, 136, 48 P.3d 344 (2002). A jury may also infer possession with intent to deliver a controlled substance from evidence that a defendant delivered a controlled substance to another person shortly before his arrest. State v. Hernandez, 85 Wn. App. 672, 676, 935 P.2d

623 (1997); Brown, 68 Wn. App. at 484. Whitaker argued at trial that Officer Lednicky's testimony failed to establish that he delivered a controlled substance before his arrest because, for instance, the officer did not see him receive money and because the substance allegedly transferred was not recovered and tested. However, the State presented ample evidence giving rise to an inference that Whitaker possessed the cocaine with intent to deliver. There is no dispute that Whitaker possessed both drugs and a substantial amount of cash when he was arrested. And Officer Lednicky testified that he saw Whitaker briefly converse with another person, saw that person confer and combine funds with another, and then saw Whitaker remove a small white rock from a baggie containing multiple rocks and give it to the person who first approached him. This testimony was uncontroverted. The trial court acted within its discretion in declining to give Whitaker's proposed instruction because it was not supported by the evidence.

Whitaker contends that his proposed instruction was not misleading because it correctly informed the jury that the presence of "other facts and circumstances," in addition to possession, could support an inference of intent to deliver. Cf. State v. Ehrhardt, 167 Wn. App. 934, 939, 276 P.3d 332 (2012) (proposed instruction stating that "'[m]ere possession of stolen property'" was an insufficient basis to find the defendant guilty of burglary or theft was misleading because it failed to inform the jury that the defendant's presence at the scene and his possession of recently stolen property could suffice). However, as the State points out, Whitaker's proposed instruction used the plural "facts and circumstances," suggesting that in addition to the fact of possession, the State was required to produce evidence of multiple additional factors suggestive of a sale to support an inference of intent to deliver. But, in fact, proof

of only one additional factor is required. See Goodman, 150 Wn.2d at 783. To the extent that Whitaker's proposed instruction indicates otherwise, it was misleading.

Opinion Testimony

Whitaker next claims that Officer Lednicky's testimony invaded the province of the jury and amounted to improper opinion testimony as to guilt.

"[T]here are some areas which are clearly inappropriate for opinion testimony in criminal trials. Among these are opinions, particularly expressions of personal belief, as to the guilt of the defendant, the intent of the accused, or the veracity of witnesses." State v. Montgomery, 163 Wn.2d 577, 591, 183 P.3d 267 (2008). Such testimony is unfairly prejudicial to the defendant because it invades the exclusive province of the jury. State v. Demery, 144 Wn.2d 753, 759, 30 P.3d 1278 (2001). Opinion testimony is testimony based on one's belief or idea rather than on direct knowledge of the facts at issue. Demery, 144 Wn.2d at 760. Opinion testimony is not improper if it is not a direct comment on the defendant's guilt, is otherwise helpful to the jury, and is based on inferences from the evidence. City of Seattle v. Heatley, 70 Wn. App. 573, 578, 854 P.2d 658 (1993).

Officer Lednicky testified about Whitaker's arrest following his observation of the apparent drug transaction. He explained that after Whitaker and the two individuals parted ways, he did not follow the movements of the apparent purchasers because he "believed" he had "developed probable cause to arrest" Whitaker. RP at 94. Defense counsel objected to Officer Lednicky's testimony that he had "probable cause" as irrelevant. The court overruled the objection.

Officer Lednicky then testified that while continuing to watch Whitaker, he supplied information about Whitaker to the arrest team so that the officers could find and arrest him. Officer Lednicky confirmed that when the arresting officers arrived, they contacted Whitaker, who was the same person he had just observed engage in a drug transaction. When he saw the arresting officers contact Whitaker, Officer Lednicky said he advised them over the radio that "they had contacted the correct suspect." RP at 100. Whitaker did not object to these statements.

Whitaker seeks reversal of his conviction based this testimony. He claims that these remarks "clearly impl[ied] Lednicky's personal belief" in his guilt. App. Br. at 13.

As in Montgomery, Whitaker contends that Officer Lednicky testified, not to facts, but to legal conclusions about his guilt. In that case, detectives followed the defendants from store to store where they purchased various ingredients that could be used to manufacture methamphetamine. Montgomery, 163 Wn.2d at 585. The State charged Montgomery with possessing pseudoephedrine with intent to manufacture. Montgomery, 163 Wn.2d at 586. At trial, one of the detectives testified:

> I felt very strongly that they were, in fact, buying ingredients to manufacture methamphetamine based on what they had purchased, the manner in which they had done it, going from different stores, going to different checkout lanes. I'd seen those actions several times before.

Montgomery, 163 Wn.2d. at 587-88. Another detective testified that "'those items were purchased for manufacturing.'" Id. Later, a forensic chemist testifying on behalf of the State looked at the combined purchases and testified that "'these are all what lead me toward this pseudoephedrine is possessed with intent.'" Id. (quoting RP at 160.)

8

The court held that all of this testimony amounted to an improper opinion on the defendant's guilt. Montgomery, 163 Wn.2d at 595. The court stated that the opinions went to the core issue of Montgomery's intent, used explicit expressions of personal belief, and in one instance even parroted the legal standard. The court further observed that although the opinions of law enforcement officers have an "aura of reliability," police officers' opinions on guilt actually have low probative value because their expertise is in determining when an arrest is justified, not evaluating whether an offense has been proved beyond a reasonable doubt. Montgomery, 163 Wn.2d at 594-95.

However, while the testimony was improper, Montgomery was not prejudiced. Montgomery, 163 Wn.2d at 595-96. The court reasoned that a timely objection and curative instructions could have mitigated any prejudice caused by the improper testimony. Montgomery, 163 Wn.2d at 596. The court also noted that the jurors were properly instructed that they were the sole judges of witness credibility and that they were not bound by any expert opinion. Montgomery, 163 Wn.2d at 595.

Likewise here, Whitaker objected only to the testimony about probable cause and that objection was on a different ground. He failed to properly preserve the claim of error. This court generally declines to address issues not raised below. RAP 2.5(a). One exception to this general rule is a manifest constitutional error. RAP 2.5(a)(3). "Permitting a witness to testify as to the defendant's guilt raises a constitutional issue because it invades the province of the jury and the defendant's constitutional right to a trial by jury." State v. Olmedo, 112 Wn. App. 525, 533, 49 P.3d 960 (2002); accord State v. Kirkman, 159 Wn.2d 918, 927, 155 P.3d 125 (2007). But RAP 2.5(a)(3) also requires an appellant to show the error was "manifest," meaning that there must be a plausible

showing "'that the asserted error had practical and identifiable consequences in the trial of the case.'" Kirkman, 159 Wn.2d at 935 (internal quotation marks omitted) (quoting State v. WWJ Corp., 138 Wn.2d 595, 603, 980 P.2d 1257 (1999)). Our courts "ha[ve] expressly declined to take an expansive view of claims that testimony constitutes an opinion of guilt." Heatley, 70 Wn. App. at 579. A witness must state an "explicit or almost explicit" opinion on the defendant's guilt for unobjected to testimony to constitute manifest error. Kirkman, 159 Wn.2d at 937.

Unlike the testimony in Montgomery, Officer Lednicky did not explicitly express his personal belief about Whitaker's guilt or intent and did not parrot the legal standard. The officer's testimony that the person the arrest team contacted was the same person he had just seen engaging in an apparent drug sale was not a legal opinion as to guilt, but a factual determination based on his own direct observations. The testimony that the arrest team contacted the "correct suspect" was merely a shorthand way of saying the same thing.

Because Officer Lednicky's testimony about probable cause to arrest was not relevant to any issue the State was required to prove, defense counsel appropriately objected and the court should have sustained the objection. Nevertheless, the context of the officer's testimony about probable cause was different and far less prejudicial than what occurred in State v. Stith, 71 Wn. App. 14, 22-23, 856 P.2d 415 (1993), a case upon which Whitaker relies. In Stith, defense counsel made an argument suggesting that police officers fabricated their testimony. The prosecutor responded by arguing:

> Our system has incredible safeguards that would not allow a
> case like this to come to court if somehow the police acted

> improperly. So the question of probable cause is something the
> judge has already determined before the case came before you
> today.

Stith, 71 Wn. App. at 17. In this case, Officer Lednicky merely explained why he focused on Whitaker and the arrest team instead of following the movements of the two other individuals. The jury already knew that the police believed they could arrest Whitaker and that there was probable cause to arrest and charge him with the crime. This does not mean that the arrestee is guilty of the crime charged, only that the accused must stand trial. Officer Lednicky's testimony about probable cause, while not relevant, was not equivalent to testimony that Whitaker was, in the officer's opinion, guilty.

And, as in Montgomery, the jurors were properly instructed that they were the "sole judges" of credibility and of the weight and value to be given to the evidence. CP at 45. The jury was instructed of its duty to "decide the facts" that were proved and to apply the law to those facts. CP at 44. The jurors were further instructed that although a witness with special training, education, or experience may be allowed to express an onion, they were "not required to accept" that opinion. CP at 52. There is no reason to believe that the jury did not follow these instructions or that it was misled into thinking that the detective's belief in the existence of probable cause or his belief that the police arrested the same person he observed satisfied the State's burden of proof. No error is manifest.

Ineffective Assistance of Counsel

Whitaker contends, in the alternative, that his counsel was ineffective for failing to object, on the correct basis, or move to strike the testimony that he now alleges was improper.

11

To prevail on a claim of ineffective assistance of counsel a defendant must demonstrate that: (1) counsel's representation was deficient, meaning it fell below an objective standard of reasonableness based on consideration of all of the circumstances; and (2) the defendant was prejudiced, meaning there is a reasonable probability that the result of the proceeding would have been different but for the challenged conduct. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). There is a strong presumption of effective assistance, and Whitaker bears the burden of rebutting that presumption. McFarland, 127 Wn.2d at 335-36. If he fails to establish either prong of the test, we need not inquire further. State v. Foster, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

Whitaker fails to overcome the presumption that he received effective assistance of counsel. As discussed above, neither the officer's testimony about probable cause nor his testimony about Whitaker's arrest were explicit, or nearly explicit, opinions as to his guilt. Accordingly, the failure to object on this basis or move to strike did not fall below an objective standard of reasonableness. Without a showing of deficient performance, the claim of ineffective assistance of counsel fails.

Appellate Costs

Whitaker asks us to deny appellate costs. Appellate costs are generally awarded to the substantially prevailing party on review. RAP 14.2. However, when a trial court makes a finding of indigency, that finding remains throughout review "unless the commissioner or clerk determines by a preponderance of the evidence that the offender's financial circumstances have significantly improved since the last

determination of indigency. . . ." RAP 14.2. Whitaker was found indigent by the trial court. Under RAP 14.2, if the State has evidence indicating that Whitaker's financial circumstances have significantly improved since the trial court' s finding, it may file a motion for costs with the commissioner. <u>State v. St. Clare</u>, 198 Wn. App. 371, 382, 393 P.3d 836 (2017).

Affirmed.

Spearman, J.

WE CONCUR:

Dwyer, J.

Cox, J.