# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　　　　　Respondent,<br><br>　　v.<br><br>KARL E. REDMOND,<br><br>　　　　　　　　　Appellant. | No. 60350-1-II<br><br><br>UNPUBLISHED OPINION |

CHE, J. — Karl Eugene Redmond appeals his conviction for attempting to elude a pursuing police vehicle.

Redmond argues the trial court (1) violated his CrR 3.3 speedy trial right by granting a continuance over his objection, (2) interfered with his right to counsel and right to present a defense by summarily denying Redmond's request for new counsel, (3) improperly refused to give a lesser included jury instruction for failing to obey a law enforcement officer, and (4) violated his right to present a defense by refusing to give a necessity defense jury instruction.

We hold that, based on the evidence presented at trial, Redmond failed to show that he was entitled to either a lesser-included offense for failing to obey an officer or a necessity defense instruction. Additionally, we hold that Redmond fails to show that the trial court erred or violated his constitutional rights by granting a good cause continuance and denying Redmond's motion for new counsel after opening statements. Accordingly, we affirm.

FACTS

*Background Facts*

In October 2020, at approximately 1:39 p.m., Sergeant Kelli Howes and another state trooper were sitting in Sergeant Howes' marked patrol vehicle on the shoulder of southbound Interstate 5 (I-5) when a vehicle on the roadway caught her attention. Sergeant Howes merged onto I-5 and positioned herself next to the vehicle, seeing the driver's clothing. Sergeant Howes had a legal, legitimate reason to initiate a traffic stop and activated her patrol vehicle's lights and siren. Sergeant Howes pursued the vehicle, but the vehicle did not stop, increased its speed, and drove on a shoulder. Once the vehicle stopped, the driver ran away, but law enforcement was able to apprehend the driver. The driver of the vehicle was eventually identified as Redmond.

The State charged Redmond with attempting to elude a pursuing police vehicle, theft of a motor vehicle, and driving under the influence. Before trial, the State filed a third amended information, charging Redmond only with attempting to elude a pursuing police vehicle.

*Testimony*

At trial, the witnesses testified consistently with the facts presented above. Additionally, Sergeant Howes testified that, while trying to position herself behind Redmond's vehicle to initiate a traffic stop, it sped away. Sergeant Howes estimated that the vehicle traveled 80 to 100 miles an hour during a nearly three-mile pursuit. She observed the vehicle using all lanes of traffic as well as the right-hand shoulder to navigate through light to medium traffic. Sergeant Howes did not recall the vehicle using any turn signals and saw it making "aggressive movements." Report of Proceedings (RP) (Apr. 23, 2024) at 289. She observed vehicles around the pursued vehicle having to slow to avoid collisions.

2

Eventually, the vehicle cut through a gore point[1] to reach an exit and then continued to use all lanes of the off-ramp as well as the shoulder. When the vehicle reached a red traffic light at the end of the off-ramp, the vehicle traveled over a cement curb separating the left lane at the traffic light from oncoming traffic besides it, traveled into the oncoming lane, and went through the intersection. Sergeant Howes decided to terminate the pursuit and not drive over the cement curbing, but then a vehicle at the red light moved out of the way so Sergeant Howes could pass without driving over the curbing. The pursued vehicle turned into a parking lot and stopped. The driver, who Sergeant Howes observed was a Black male and later identified as Redmond, proceeded to exit the vehicle and run through multiple businesses before he was located and detained.

Redmond testified that he was driving along I-5 when he noticed Sergeant Howes' patrol vehicle on the shoulder. When the patrol vehicle got behind him and activated its lights, Redmond became scared and did not know what to do. RP (Apr. 23, 2024) at 327. He explained,

> I think that was in the same month that George Floyd had just got killed. And so some of the things had hit the media where black men were getting pulled over, shot and killed by the police.
> . . . .
> I was just scared. I was scared to pull over for her or whoever, him, or police at the time. I just seen lights and I was scared, you know, the lights. My whole life those lights have been—you know, they're not friendly lights.

RP (Apr. 23, 2024) at 328. Redmond "ran for the first exit . . . focused on getting to around where more people would be had I exit the vehicle." RP (Apr. 23, 2024) at 328-29. He admitted

---

[1] A gore point is "a thick white painted triangle-shaped area . . . separat[ing] the exit lane from the main line of the freeway." RP (Apr. 23, 2024) at 289.

that he drove over 80 miles per hour at one point and drove on the shoulder of the off-ramp and around another car stopped at the off-ramp traffic light. According to Redmond, traffic at the time was "more heavy" than Sergeant Howes said it was and the off-ramp was backed up with vehicles. RP (Apr. 24, 2024) at 350. When Redmond parked the car in the lot, he jumped out and ran into the first business so he "wouldn't be killed in the car." RP (Apr. 23, 2024) at 331.

According to Redmond, he had never had any interactions with the police that were "good or friendly." RP (Apr. 23, 2024) at 336. He explained,

> when it comes to police, I—I'm scared of them. You know, they hit those lights or they even look at me, you know, it's adrenaline. It's—my body, it's a feeling that is different that—it's like an overdrive, a shifting of, you know, survival, of how to live or not get killed, you know. I don't know whether to trust them or not.

RP (Apr. 23, 2024) at 336. Redmond had a phone with him at the time but felt like he could not call 911 because he does not use the phone while driving. And Redmond did not drive to a police station because he was unfamiliar with the area and did not know where a police station was located.

*Procedural Facts*

Redmond was first arraigned and entered a not guilty plea in November 2020. RP (Nov. 3, 2020) at 3. Over the next three years, which included a portion of the COVID-19 pandemic when jury trials were suspended, trial was continued for various reasons including at the request or with the agreement of Redmond. Redmond does not assign error to any of these continuances in this appeal.

In November 2023, Redmond's trial was set for February 2024. The parties stipulated that the last allowable date for trial under CrR 3.3 was March 13.

4

On February 1, 2024, the trial court heard the State's motion for at least a month continuance for multiple reasons. The State's assigned counsel had changed recently, and the new prosecutor needed time to prepare the case for trial. Additionally, upon reaching out to the alleged victim of the stolen vehicle to determine their availability for trial, the State believed that a preservation deposition was needed because the witness was elderly and bedridden. If a preservation deposition was not possible, the State needed to make a new plea offer. The State also needed additional time to locate and serve another witness who no longer worked at their prior contact information. The State requested a continuance for good cause and noted that, at the time, Redmond was out of custody.

Redmond objected to the continuance due to the long delay in the case, but his counsel acknowledged that "[s]ome of the delays have been due to other cases that [] Redmond had in different jurisdictions and some due to changes of counsel on both sides." RP (Feb. 1, 2024) at 61. Redmond's counsel also could not identify any specific prejudice the continuance would cause.

The trial court granted the State's request and found good cause for all the reasons presented by the State and also because there would not be prejudice to Redmond's defense:

> Part of that factoring is all the reasons that have been put on the record, both in the written pleading and what [the prosecutor] said today. But it's also the fact that there isn't legal prejudice to the presentation of your case. The fact that there is not leads me to the conclusion that this request is a good cause continuance.

RP (Feb. 1, 2024) at 62-63. The parties then agreed that the last allowable trial date under CrR 3.3 moved to April 17, and the trial court set trial for March 18.

When the case proceeded to trial and just before opening statements, Redmond's counsel notified the court that Redmond wanted to be heard on a potential request to dismiss counsel.

5

The court invited Redmond to make his request. Redmond told the court that he was just informed by his defense counsel that they were unaware of his "actual defense." RP (Apr. 23, 2024) at 255. Redmond's counsel interjected and explained:

> we had a brief—Mr. Redmond and I had a brief discussion outside the courtroom. I think I am aware of his defense. I think that we have a difference of opinion on how that would be presented and on some of the jury instructions.

RP (Apr. 23, 2024) at 255. Redmond asked the trial court to "advise the jury under law what it is that is a necessity defense." RP (Apr. 23, 2024) at 256. The trial court responded that they were not at the stage where the court was instructing the jurors on the law and that such would occur later. The court advised Redmond that, before finalizing the jury instructions, Redmond would have an opportunity to give input into the instructions. The court asked whether Redmond had any further requests and he replied, "No." RP (Apr. 23, 2024) at 257.

Soon after opening statements,[2] Redmond requested removal of his counsel. Redmond told the trial court that he anticipated his counsel would raise a necessity defense, but his counsel told him that they were not aware of Redmond's desired defense. Redmond indicated that he discussed the necessity defense with his prior counsel, but it appeared that information was not communicated to Redmond's trial counsel. Redmond explained,

---

[2] In defense's opening statement, counsel stated, in relevant part, that "[y]ou are also going to hear from Karl Redmond. He will tell you what he recalls at the time and what he recalls from the pursuit. . . . And taking all of the information that you receive and considering all of the circumstances around the pursuit in this case . . . then it will be your duty to find Karl Redmond not guilty." RP (Apr. 23, 2024) at 264.

And so I believe that it handicapped her opening statement which had—not once did she mention the word defense or she did mention that Mr. Redmond would be testifying but not in his defense. And so not being able to have those things orally, you know, spoken out into the record, and especially in front of the jury, I believe it prejudiced my defense, which I just found out I hadn't had entered into this case because that would be the only reason that I would be testifying with a record like mine in my own defense. I'm not testifying just to be testifying for fun. I was defending myself.

RP (Apr. 23, 2024) at 268-69. The trial court asked Redmond whether he knew of the legal test the court had to apply to decide whether to remove his counsel at this stage of the trial or a legal basis Redmond was relying on for his request. When Redmond responded he could look it up and provide the court with a brief in the morning, the trial court invited him to do so and stated it would review it.

The trial court then denied Redmond's motion without prejudice finding that Redmond "has not provided any authority or basis for [] removal this late in the proceedings." RP (Apr. 23, 2024) at 270. Redmond did not provide the trial court with any briefing the next day and told the trial court that he did not wish to renew his motion.

After the State and the defense rested, Redmond's counsel proposed a lesser-included offense instruction for failure to obey a law enforcement officer and a necessity defense instruction.

The State objected to instructing the jury on the lesser-included offense because "the agreed-upon facts here indicate that [Redmond] did not drive in a rash or heedless manner, indifferent to the consequences." RP (Apr. 24, 2024) at 378. Defense responded that whether uncontested facts showed that Redmond drove in such a manner was a question for the jury and defense's main argument was that Redmond did not drive in a rash and heedless manner, indifferent to the consequences.

7

The State also objected to instructing the jury on a necessity defense because "typically the defense of necessity, the pressure must come from the forces of nature, something other than other human beings." RP (Apr. 24, 2024) at 381. The State noted that it could not find an authority in Washington supporting such a defense for fear of police. The State also argued that Redmond's response to the situation was not reasonable and other reasonable alternatives existed. In particular, the State argued that Redmond "could have driven slowly and rationally to another area [and i]nstead the evidence indicates that he drove recklessly and that would not be a reasonable response that created less danger than the alternatives." RP (Apr. 24, 2024) at 387.

In response, defense argued that *State v. Spokane County District Court*, 198 Wn.2d 1, 491 P.3d 119 (2021) supported a necessity defense for the acts of others and not just forces of nature. Defense also argued that, since 1985, there was a shift in how the courts look at issues related to fear of police and pointed specifically to the Washington Supreme Court's June 2020 letter[3] noting systemic injustices facing Black Americans, including racialized policing.

The trial court denied Redmond's request to instruct the jury with either instruction. The trial court explained that Redmond was not entitled to the lesser-included offense instruction because the court did not believe that, given Redmond's testimony, defense showed sufficient evidence that Redmond did not drive in a rash or heedless manner, indifferent to the consequences. The court instead viewed Redmond's testimony as explaining the reasons why Redmond drove in that manner.

---

[3] Letter from the Wash. Supreme Court to Members of Judiciary & Legal Cmty. (June 4, 2020), https://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20News/Judiciary%20Legal%20Community%20SIGNED%20060420.pdf.

8

Regarding the necessity defense instruction, the trial court, upon reviewing the testimony in the case, determined that defense had not met its burden of showing that there was no reasonable legal alternative but to commit the underlying crime. Specifically, the court stated:

> In the . . . *Spokane County* . . . case, the court indicated that to demonstrate there is no reasonable legal alternative but to commit the underlying crime the defendant must show that he had actually tried the alternative or had no time to try it or that a history of futile attempts revealed the illusionary benefits of the alternative. And the court believes that the defendant has not made that showing in the facts of this case.

RP (Apr. 24, 2024) at 392.

The jury found Redmond guilty of attempting to elude a pursuing police vehicle. The trial court sentenced Redmond to 25 months of total confinement.

Redmond appeals.

## ANALYSIS

### I. RIGHT TO SPEEDY TRIAL UNDER CrR 3.3

Redmond argues the trial court violated Redmond's rule-based speedy trial right by granting the February 2024 continuance. He maintains that the trial court applied the wrong legal standard, the trial court failed to provide an adequate record for its decision, and the State did not establish good cause sufficient to justify the continuance.[4] We disagree.

Granting a motion for continuance is within the discretion of the trial court. *State v. Ollivier*, 178 Wn.2d 813, 822, 312 P.3d 1 (2013). Accordingly, we do not disturb its decision absent "a clear showing it [was] 'manifestly unreasonable, or exercised on untenable grounds, or

---

[4] Preliminarily, the State contends Redmond failed to preserve his claim below and argues we decline to consider the merits of his claim pursuant to RAP 2.5(a). However, the record reflects Redmond objected to the continuance he now challenges. We conclude that Redmond preserved his claim and, thus, consider the merits of his claim.

for untenable reasons.'" *State v. Kenyon*, 167 Wn.2d 130, 135, 216 P.3d 1024 (2009) (internal quotation marks omitted) (quoting *State v. Flinn*, 154 Wn.2d 193, 199, 110 P.3d 748 (2005)).

CrR 3.3 makes it "the responsibility of the court to ensure a trial in accordance with this rule to each person charged with a crime." (a)(1). Under the rule and on the motion of the court or a party, "the court may continue the trial date to a specified date when such continuance is required in the administration of justice and the defendant will not be prejudiced in the presentation of his or her defense." CrR 3.3(f)(2). Such a motion must be made before the time for trial has expired, and the court must state the reasons for the continuance on the record or in writing. CrR 3.3(f)(2).

Redmond first argues that the trial court misapplied CrR 3.3(f)(2) by "importing the lack-of-prejudice requirement into its good cause analysis." Br. of Appellant at 63. Redmond contends that the trial court should have considered the question whether the continuance was required in the administration of justice and whether Redmond's defense would be prejudiced independently pursuant to the plain language of CrR 3.3(f)(2). But, even if the rule required independent consideration, there is no indication in the record that the trial court did not consider the two components independently. The trial court explained that it accepted the State's request both because of the State's reasons for its request *and* the fact that there would be no prejudice to Redmond's presentation of his case. Per Redmond's own reading of the rule, the trial court was required to consider both components in deciding whether to grant the continuance and, here, the record indicates the trial court did just that.

Next Redmond contends that the trial court rested its decision on an insufficient record and that the State's reasons for its motion did not justify the continuance. The State presented

multiple reasons for its motion for a continuance including recent reassignment of the State's counsel who needed time to prepare the case for trial, a witness who could not be found, and another witness who was elderly and bedridden and, thus, may require a preservation deposition. The State explained that, if a preservation deposition could not be acquired for the infirm witness, the State may present Redmond with a new plea deal. Based on the State's representations, it was not manifestly unreasonable for the trial court to conclude that these reasons alone were sufficient to find that the continuance was required in the administration of justice.

To the extent that Redmond argues that the overall delay in his case was a reason the trial court should have denied the continuance request, Redmond's case was continued from November 2020 onward mostly with Redmond's agreement. Additionally, part of this timeframe included a portion of the COVID-19 pandemic when jury trials were suspended. Moreover, for the February 2024 continuance, Redmond's counsel acknowledged Redmond's frustration with the lengthy delay in his case but acknowledged that some delays were due to other cases Redmond had and changes of counsel on both sides. Redmond does not assign error to any of his case's other continuances on appeal nor his counsel's representation for him at the February 2024 continuance hearing. Considering these facts, it was not manifestly unreasonable for the trial court to conclude that State's reasons for its request justified granting the February 2024 continuance even despite the long delay in Redmond's case.

We hold that the trial court did not abuse its discretion in granting the February 2024 continuance.

## II. REQUEST FOR NEW COUNSEL

Redmond argues that the trial court interfered with his right to counsel and right to present a defense by summarily denying Redmond's request for new counsel with inadequate inquiry into the reasons for Redmond's request.[5] We disagree.

We generally review a trial court's decision relating to conflicts between clients and their attorneys for abuse of discretion. *State v. Cross*, 156 Wn.2d 580, 607, 132 P.3d 80 (2006), *abrogated on other grounds by*, *State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018); *see also State v. Varga*, 151 Wn.2d 179, 200, 86 P.3d 139 (2004). In reviewing the trial court's decision, we consider three factors: (1) the conflict's extent, (2) the adequacy of the trial court's inquiry, and (3) the motion's timeliness. *State v. Elwell*, 199 Wn.2d 256, 272-73, 505 P.3d 101 (2022); *see also United States v. Moore*, 159 F.3d 1154, 1158-59 (9th Cir. 1998) (presenting the same three factors for considering whether a district court erred in denying a motion to substitute counsel).

Redmond appears to argue that the trial court erred in failing to apply the three factors. However, such factors apply to our review of the trial court's decision and are not a requirement for the trial court's consideration of a motion for new counsel. "When *we* review the trial court's ruling, '*we* consider [the factors].'" *Elwell*, 199 Wn.2d at 272-73 (emphasis added) (quoting

---

[5] Again, the State contends Redmond failed to preserve his claim below and argues we decline to consider the merits of his claim pursuant to RAP 2.5(a). The State appears to assert the trial court reserved ruling on Redmond's motion and, thus, contend Redmond either essentially withdrew his motion when defense counsel requested the necessity instruction or waived the issue by not renewing his motion. But from the record the trial court denied Redmond's motion, albeit without prejudice and invited Redmond to renew his motion the next day if he wanted to provide briefing. We conclude that Redmond did not waive this issue and, thus, reach the merits of his claim.

*Cross*, 156 Wn.2d at 607). We turn to evaluating whether the trial court abused its discretion by otherwise failing to inadequately inquire into the reasons for Redmond's request.

When a defendant requests substitution of counsel based on a disagreement about strategy, the trial court must decide whether "the 'relationship between lawyer and client completely collapse[d].'" *Id.* at 272 (alternations in original) (quoting *Cross*, 156 Wn.2d at 607). Upon learning of a conflict between the defendant and their counsel, the trial court has "an 'obligation to inquire thoroughly into the factual basis of the defendant's dissatisfaction' sufficient to reach an informed decision." *State v. Davis*, 3 Wn. App. 2d 763, 790, 418 P.3d 199 (2018) (quoting *State v. Thompson*, 169 Wn. App. 436, 462, 290 P.3d 996 (2012)). The inquiry must be "meaningful" and include a "full airing" of the defendant's concerns. *Cross*, 156 Wn.2d at 610.

But "[f]ormal inquiry is not always essential where the defendant otherwise states his reasons for dissatisfaction on the record." *State v. Schaller*, 143 Wn. App. 258, 271, 177 P.3d 1139 (2007); *see State v. Holmes*, 31 Wn. App. 2d 269, 284, 548 P.3d 570, *review denied*, 3 Wn.3d 1024 (2024).

When Redmond requested new counsel, he explained that his request derived from alleged deficiencies in defense counsel's opening statement. He told the trial court that he had anticipated his counsel would raise a necessity defense, but his counsel was unaware of Redmond's desire to raise such defense. Redmond asserted that his defense was prejudiced because his counsel did not mention a defense in her statements or noted that Redmond would be testifying "but not in his defense." RP (Apr. 23, 2024) at 268-69. Just prior to his request and opening statements, Redmond had raised a similar issue to the trial court and Redmond's counsel

13

had told the court that they had spoken about the defense and had a "difference of opinion on how that would be presented." RP (Apr. 23, 2024) at 255.

Through Redmond's statements surrounding his request for new counsel and the context provided by his counsel prior to Redmond's request, the trial court was sufficiently informed so to not require additional, formal inquiry into the reasons of Redmond's request. In denying Redmond's request at the time, the trial court informed him that he had failed to provide "any authority *or basis* for [] removal this late in the proceeding," but invited Redmond to provide additional information through briefing. RP (Apr. 23, 2024) at 270 (emphasis added). Redmond filed no briefing on the matter and declined to renew his request to remove counsel. Further, when it came time for consideration of jury instructions, Redmond's counsel proposed a necessity defense instruction.

Redmond relies on two opinions out of the Ninth Circuit, *United States v. Torres-Rodriguez*[6] and *United States v. Musa*[7] in arguing that the trial court abused its discretion here. But both cases are distinguishable in that the trial court provided no opportunity for the defendants in those cases to explain the basis for their request. *Torres-Rodriguez*, 930 F.2d at 1381; *Musa*, 220 F.3d at 1102. Here, Redmond had the opportunity to explain the basis for his request and did so.

Generally, when a defendant raises concerns about their counsel, trial courts should inquire into the reasons for the request and the extent of the conflict to ensure the court is well

---

[6] 930 F.2d 1375 (9th Cir. 1991), *abrogated on other grounds by Bailey v. United States*, 516 U.S. 137, 116 S. Ct. 501, 133 L. Ed. 2d 472 (1995).

[7] 220 F.3d 1096 (9th Cir. 2000).

informed in making its decision. The trial court did so here and had sufficient facts related to the representation conflict to make an informed decision. We hold that, under the circumstances here where the trial court was well informed of Redmond's reasons for seeking new counsel, the trial court did not abuse its discretion by not inquiring further.

### III. LESSER-INCLUDED OFFENSE

Redmond argues that the trial court erred in refusing to instruct the jury on the lesser-included offense of failure to obey a police officer. We disagree.

A person fails to obey an officer if one "willfully fails to stop when requested or signaled to do so by a person reasonably identifiable as a law enforcement officer or to comply with RCW 46.61.021(3)," which requires a person to identify themself and provide a current address when requested by a law enforcement officer in the investigation of a traffic infraction. RCW 46.61.022. Such crime is a misdemeanor. RCW 46.61.022. A person commits the crime of attempting to elude police vehicle, a class C felony, if they, as a driver of a motor vehicle, "willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop." RCW 46.61.024(1).

"A defendant is not automatically entitled to a lesser included offense instruction." *State v. Avington*, 2 Wn.3d 245, 258, 536 P.3d 161 (2023). A defendant is entitled to such instruction if two conditions are met: "First, each of the elements of the lesser offense must be a necessary element of the offense charged. Second, the evidence in the case must support an inference that the lesser crime was committed." *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978).

15

The parties do not dispute whether the legal prong of the test is satisfied and both case law and the language of the applicable statutes indicate that each of the elements of the crime of failure to obey a police officer are necessary elements of the crime of attempting to elude a pursing police vehicle. *See* RCW 46.61.022, .024; *State v. Brown*, 40 Wn. App. 91, 96 n.3, 697 P.2d 583 (1985). Therefore, we turn to the factual prong, whether there was a factual basis for believing that Redmond committed failure to obey a police officer.

As our Supreme Court explained in *State v. Coryell*:

> a defendant is entitled to a lesser included instruction based on the evidence actually admitted. A defendant is not entitled to a lesser included instruction merely because a jury could ignore some of the evidence. The factual prong of *Workman* is satisfied only if based on some evidence admitted, the jury could reject the greater charge and return a guilty verdict on the lesser.

197 Wn.2d 397, 406-07, 483 P.3d 98 (2021). The evidence may derive from whatever source, including cross-examination; however, it must affirmatively establish the defendant's theory. *Avington*, 2 Wn.3d at 259.

We review a trial court's refusal to give a requested instruction based on factual reasons for an abuse of discretion. *State v. Arbogast*, 199 Wn.2d 356, 365, 506 P.3d 1238 (2022). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. *State v. Lamb*, 175 Wn.2d 121, 127, 285 P.3d 27 (2012). A trial court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard, and the decision is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard. *Id*.

The distinguishing element between the offense of attempting to elude a pursuing police vehicle and failing to obey to a police officer is whether the driver drove "in a reckless manner" during the offense. RCW 46.61.024(1); RCW 46.61.022. An individual drives recklessly if they drive in "'a rash or heedless manner, with indifference to the consequences.'" *State v. Naillieux*, 158 Wn. App. 630, 644, 241 P.3d 1280 (2010) (quoting *State v. Ratliff*, 140 Wn. App. 12, 16, 164 P.3d 516 (2007)). Therefore, to show that he was entitled to the lesser-included offense instruction, Redmond had to present some affirmative, admitted evidence that he committed only a failure to obey a police officer.

Based on the evidence in our record, it was not manifestly unreasonable for the trial court to determine that Redmond had not shown evidence that he did not drive in a reckless manner. Redmond admitted that, while driving away from Sergeant Howe's patrol vehicle, he drove at least 80 miles an hour on I-5. He additionally admitted that, when exiting I-5 on an exit off-ramp, he drove on the shoulder and around another car stopped at a traffic light despite the off-ramp being backed up with "more heavy" traffic. RP (Apr. 24, 2024) at 350. Redmond drove in this manner "[running] for the first exit . . . [and] focused on getting to around where more people would be." RP (Apr. 23, 2024) at 328-29. All of these admissions show that Redmond was driving in a reckless manner. *See State v. Young,* 158 Wn. App. 707, 723, 243 P.3d 172 (2010), *review denied*, 171 Wn.2d 1013 (2011) (driving at excessive speeds, swerving in and out of traffic, driving into an oncoming lane of traffic, and running red lights are sufficient to establish driving in a rash or heedless manner).

Redmond is correct that affirmative evidence may include "impeachment evidence, evidence of bias, or inability to recall." *Coryell*, 197 Wn.2d at 408. But none of the alleged

17

"weaknesses" in Sergeant Howes' testimony that Redmond identifies *affirmatively* established Redmond not driving recklessly. *See* Br. of Resp't at 43 (no corroborating evidence), 44 (testifying from memory and failing to remember Redmond's name without referring to a report), 45 (inconsistencies with how drivers responded to Redmond's driving in a report).

Even viewed in the light most favorable to Redmond, the evidence admitted in the case supported the offense of attempting to elude a pursuing police vehicle rather than solely the offense of failure to obey a police officer. Accordingly, we hold that the trial court did not abuse its discretion in determining that Redmond failed to satisfy *Workman*'s factual prong and, thus, was not entitled to an instruction on the lesser-included offense.

## IV. NECESSITY DEFENSE

Redmond claims that the trial court violated his right to present a defense when it refused to provide the jury with a necessity defense instruction. We disagree.

"Each side in a case is entitled to instructions embodying its theory of the case if the evidence supports that theory." *State v. Parker*, 127 Wn. App. 352, 354, 110 P.3d 1152 (2005). However, the trial court cannot give an instruction that is unsupported by the evidence. *State v. Ager*, 128 Wn.2d 85, 93, 904 P.2d 715 (1995). Accordingly, a defendant has no right to an instruction "for which there is no evidentiary support." *Id*.

To raise a necessity defense, a defendant must show by a preponderance of the evidence each of the following:

> "(1) [the defendant] reasonably believed the commission of the crime was necessary to avoid or minimize a harm, (2) the harm sought to be avoided was greater than the harm resulting from a violation of the law, (3) the threatened harm was not brought about by the defendant, and (4) no reasonable legal alternative existed."

18

*Spokane County*, 198 Wn.2d at 12 (alterations in original) (quoting *State v. Ward*, 8 Wn. App. 2d 365, 372, 438 P.3d 588 (2019)).

The reasonable legal alternative "must be more than simply available . . . [the] alternatives must be effective, otherwise they would not be reasonable." *Id.* at 13-14. Whether an alternative is reasonable or adequate depends on the specific facts of the case. *Id.* at 14-15.

To demonstrate that there was no reasonable alternative but to commit the underlying crime, the defendant must show either (1) they actually tried the alternative, (2) they had no time to try it, or (3) "'a history of futile attempts revealed the illusionary benefits of the alternative.'" *Id.* at 15 (internal quotation marks omitted) (quoting *Parker*, 127 Wn. App. at 355). If the defendant shows such evidence, "they have created a question of fact for the jury regarding whether there are reasonable legal alternatives." *Id.*

Here the trial court declined to instruct the jury on Redmond's necessity defense because it found that Redmond failed to show any evidence that there was no reasonable legal alternative but to commit the underlying offense. In particular, after reviewing the testimony at trial, the trial court concluded that Redmond failed to show that he actually tried an alternative, had no time to try it, or had a history of futile attempts revealing the illusionary benefits of an alternative. Because the trial court made its decision based on factual reasons, we review its decision for an abuse of discretion. *Arbogast*, 199 Wn.2d at 365.

During trial, Redmond testified that he had never had any "good or friendly" interactions with the police and his whole life had considered police lights "not friendly." RP (Apr. 23, 2024) at 328, 336. When Sergeant Howes pulled her vehicle behind him, Redmond was scared

19

and did not know what to do other than to run. The killing of George Floyd and other Black men being pulled over, shot, and then killed by police was on his mind.

Redmond admitted he had a phone on him but felt like he could not call 911 because he did not use the phone while driving. And driving to a police station was not possible because Redmond was unfamiliar with the area and did not know where one was located. But, in running from Sergeant Howes, Redmond drove recklessly, including speeding and driving on the shoulder around traffic.

From this testimony, the trial court's determination that Redmond failed to show that he actually tried an alternative, had no time to try one, or had a history of futile attempts revealing the illusionary benefits of an alternative was not manifestly unreasonable. "'A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard.'" *Lamb*, 175 Wn.2d at 127 (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997)). To demonstrate there was no reasonable alternative but to commit the underlying crime, Redmond had to proffer evidence that he either actually tried an alternative, had no time to try one, or had a history of futile attempts of trying an alternative. *Spokane County*, 198 Wn.2d at 15. From Redmond's testimony at trial, a reasonable court could have concluded that he presented no such evidence.

Redmond argues that the trial court failed to, but should have, considered the effect of Redmond's race and a history of over-policing people of color. But Redmond does not explain how race and over-policing people of color affects Redmond's failure to present evidence that he had either actually tried a reasonable alternative to attempting to elude, had no time to try one, or had a history of futile attempts of trying an alternative. Redmond appears to assert that, because

of his legitimate fear arising from his prior personal interactions with police, pursuing any alternatives would have been futile. We can certainly understand Redmond's reaction considering recent history and his own assertions of his personal experiences. However, Redmond still fails to show that putting other people in danger with his reckless driving while fleeing was the only reasonable alternative. Even if we assume without deciding that Redmond sufficiently showed the first three requirements for raising a necessity defense, Redmond failed to show evidence that he had no reasonable alternative but to drive away from Sergeant Howe in a reckless manner.

We hold that, under these facts, the trial court did not abuse its discretion in refusing to provide the jury with a necessity defense instruction because Redmond failed to show evidentiary support for the defense.[8] Because of this, we also conclude that there was no constitutional violation.

---

[8] Redmond also argues that the trial court erred in requiring Redmond to prove he was entitled to the defense by a preponderance of the evidence. However, in its ruling, it does not appear that the trial court found that Redmond failed to prove such by a preponderance of the evidence. Instead, the trial court appears to have found that Redmond failed to show *any* evidence that there was no reasonable legal alternative but to commit the underlying crime:

> In the *State vs. Spokane County District Court* case, the court indicated that to demonstrate there is no reasonable legal alternative but to commit the underlying crime the defendant must show that he had actually tried the alternative or had no time to try it or that a history of futile attempts revealed the illusionary benefits of the alternative. And the court believes that the defendant has not made that showing in the facts of this case.

RP (April 24, 2024) at 392. Even if the trial court erred in applying the wrong burden to Redmond, there is no indication from the trial court's ruling that applying the correct one would have changed its decision. Accordingly, any such error was harmless.

No. 60350-1-II

## CONCLUSION

We affirm Redmond's conviction.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Che, J.

We concur:

Maxa, P.J.

Glasgow, J.